# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA LEE, | Case No. 1:25-cv-0161-SKO |
| Plaintiff, | |
| v. | ORDER ON PLAINTIFF'S SOCIAL SECURITY COMPLAINT |
| FRANK BISIGNANO,<br>Commissioner of Social Security[1], | |
| Defendant. | (Doc. 1) |

## I.     INTRODUCTION

Plaintiff Angela Lee ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). (Doc. 1.) The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[2]

## II.     FACTUAL BACKGROUND

On May 7, 2021, Plaintiff protectively filed a claim for DIB and SSI payments, (Administrative Record ("AR") 390–92, 358–59, 364–83), alleging she became disabled on July 10,

---

[1] On May 6, 2025, Frank Bisignano was appointed the Commissioner of the Social Security Administration. *See* https://www.ssa.gov/news/press/releases/2025/#2025-05-07. He is therefore substituted as the defendant in this action. *See* 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] The parties consented to the jurisdiction of a U.S. Magistrate Judge. (*See* Doc. 9.)

2020,[3] due to the following medical conditions: borderline diabetic, low eye vision, learning disabilities, anxiety, panic attacks, and memory problems, (AR 382).

Plaintiff was born in August 1963 and was 58 years old on the alleged onset date. (AR 374–75.) She has a GED, (AR 34, 52), but no past relevant work, (AR 34).

**A.    Relevant Medical Evidence[4]**

    1.    <u>Fresno County Behavioral Health</u>

The record includes various "medication progress notes," as well as a "Psychiatric Evaluation" from Fresno County Behavioral Health between May 2020 and January 2022. (*See* AR 530–559 (medication progress notes); 560–563 (psychiatric evaluation).) Each note reflects mental, intelligence, insight and judgment, and cognitive status findings. Those findings consistently indicate that Plaintiff was alert and cooperative, with appropriate normal insight, judgment, and cognition. (*See* AR 530–31, 533, 536–37, 539–40, 542–43, 545–46, 548, 551–52, 554, 557–58, 562, 567–68.)

    2.    <u>L. Faurbo, M.D.</u>

On November 24, 2021, Dr. Faurbo completed a mental status evaluation. (AR 505–09.) In the record of that evaluation, Dr. Faurbo recorded that Plaintiff showed intact intelligence, adequate concentration and attention, linear and logical thought process, and an ability to perform calculations. (AR 508.)

Based on his observations and evaluation, Dr. Faurbo then expressed his medical opinion in the form of a "Functional Assessment/Medical Source Statement," in which he opined that Plaintiff was "moderately limited" in her "ability to understand, remember and perform simple, written and oral instructions," "moderately limited" in "maintaining regular attendance," "perform[ing] work activities on a consistent basis," "perform[ing] work activities without special or additional supervision," "accept[ing] instruction from supervisors," "interact[ing] with coworkers and the public," and in "deal[ing] with usual stresses encountered in a competitive work environment," and "markedly limited" in her "ability to understand, remember, and perform

---

[3] Plaintiff later amended the onset date to May 7, 2021. (AR 26.)
[4] Because the parties are familiar with the medical evidence, it is summarized here only to the extent relevant to the contested issues.

2

complex written and oral instructions" and in her "ability to complete a normal workday or workweek without interruptions." (AR 509.)

3. <u>Dale H. Van Kirk, M.D.</u>

On July 10, 2023, Dr. Van Kirk completed an internal medical evaluation, in which he recorded that Plaintiff reported that he "does texting and telephone work about one half hour a day and reads about one hour a day." (AR 630.)

**B.     Administrative Proceedings**

The Commissioner denied Plaintiff's applications for benefits initially on January 3, 2022, and again on reconsideration on March 25, 2022. (AR 22, 159–37, 248–58, 238–39.) Consequently, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (AR 268–69.) At the hearing on April 5, 2023, Plaintiff appeared with counsel and testified before an ALJ as to her alleged disabling conditions. (AR 68–86.) Because the ALJ determined that they required Plaintiff to undergo a consultative examination before rendering a decision and due to technical issues during the initial hearing, a supplemental hearing was held on July 21, 2023, during which Plaintiff again appeared with counsel and testified as to her alleged disabling conditions, (AR 42–65), as did a Vocational Expert ("VE"), (AR 60–62).

During the hearings, Plaintiff testified that she cooks, (AR 49–50); uses a computer to check recipes and her email, (AR 50); uses public transport, though she "once in a while" will "get on the wrong bus or miss the bus," (AR 51, 56); and reads, (AR 71).

**C.     The ALJ's Decision**

In a decision dated November 1, 2023, the ALJ found that Plaintiff was not disabled, as defined by the Act. (AR 22–35.) The ALJ conducted the five-step disability analysis set forth in 20 C.F.R. § 404.1520. (AR 25–35.) The ALJ decided that Plaintiff met the insured status requirements of the Act through June 30, 2003, and she had not engaged in substantial gainful activity since May 7, 2021, the alleged onset date (step one). (AR 25–26.) At step two, the ALJ found Plaintiff's following impairments to be severe: major depressive disorder and generalized anxiety disorder. (AR 26–27.) Plaintiff did not have an impairment or combination of impairments

that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings") (step three). (AR 21–22.)

The ALJ assessed Plaintiff's residual functional capacity (RFC)[5] and applied the assessment at steps four and five. *See* 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity . . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps."). The ALJ determined that Plaintiff had the RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations: She can understand, remember, and carry out simple instructions; she can use judgement to make simple work related decisions; she can frequently interact with supervisors; she can occasionally interact with co-workers and the public; and she cannot perform work requiring a specific production rate, such as assembly line work or work with hourly quotas.

(AR 29.) Although the ALJ recognized that Plaintiff's impairments "could reasonably be expected to cause the alleged symptoms, the ALJ rejected Plaintiff's subjective testimony as "not entirely consistent with the medical evidence and other evidence for the reasons explained in this decision." (*Id.*)

The ALJ determined that Plaintiff had no past work experience (step four). (AR 34.) The ALJ ultimately concluded that Plaintiff was not disabled because Plaintiff could perform a significant number of other jobs in the national economy, specifically kitchen helper, industrial cleaner, and labor stores (step five). (AR 34–35.)

Plaintiff sought review of this decision before the Appeals Council, which denied review on September 4, 2024. (AR 5–11.) Therefore, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. § 404.981.

---

[5] RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis of 8 hours a day, for 5 days a week, or an equivalent work schedule. TITLES II & XVI: ASSESSING RESIDUAL FUNCTIONAL CAPACITY IN INITIAL CLAIMS, Social Security Ruling ("SSR") 96-8P (S.S.A. July 2, 1996). The RFC assessment considers only functional limitations and restrictions that result from an individual's medically determinable impairment or combination of impairments. *Id*. "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record, including, inter alia, medical records, lay evidence, and 'the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

4

### III.     LEGAL STANDARD

**A.     Applicable Law**

An individual is considered "disabled" for purposes of disability benefits if [they are] unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). However, "[a]n individual shall be determined to be under a disability only if [their] physical or mental impairment or impairments are of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A).

"The Social Security Regulations set out a five-step sequential process for determining whether a claimant is disabled within the meaning of the Social Security Act." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 20 C.F.R. § 404.1520). The Ninth Circuit has provided the following description of the sequential evaluation analysis:

> In step one, the ALJ determines whether a claimant is currently engaged in substantial gainful activity. If so, the claimant is not disabled. If not, the ALJ proceeds to step two and evaluates whether the claimant has a medically severe impairment or combination of impairments. If not, the claimant is not disabled. If so, the ALJ proceeds to step three and considers whether the impairment or combination of impairments meets or equals a listed impairment under 20 C.F.R. pt. 404, subpt. P, [a]pp. 1. If so, the claimant is automatically presumed disabled. If not, the ALJ proceeds to step four and assesses whether the claimant is capable of performing [their] past relevant work. If so, the claimant is not disabled. If not, the ALJ proceeds to step five and examines whether the claimant has the [RFC] . . . to perform any other substantial gainful activity in the national economy. If so, the claimant is not disabled. If not, the claimant is disabled.

*Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). "If a claimant is found to be 'disabled' or 'not disabled' at any step in the sequence, there is no need to consider subsequent steps." *Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

"The claimant carries the initial burden of proving a disability in steps one through four of the analysis." *Burch*, 400 F.3d at 679 (citing *Swenson v. Sullivan*, 876 F.2d 683, 687 (9th Cir. 1989)). "However, if a claimant establishes an inability to continue [their] past work, the burden shifts to the Commissioner in step five to show that the claimant can perform other substantial gainful work."

1  *Id.* (citing *Swenson*, 876 F.2d at 687).

2  **B.      Scope of Review**

3  "This court may set aside the Commissioner's denial of [social security] benefits [only] when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Tackett*, 180 F.3d at 1097 (citation omitted). "Substantial evidence . . . is 'more than a mere scintilla,'" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

"This is a highly deferential standard of review." *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009). "The ALJ's findings will be upheld if supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted). Additionally, "[t]he court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." *Id.*; *see, e.g.*, *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner." (citations omitted)).

Nonetheless, "the Commissioner's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Tackett*, 180 F.3d at 1098 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). "Rather, a court must 'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" *Id.* (quoting *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993)).

Finally, courts "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56 (9th Cir. 2006)). Harmless error "exists when it is clear from the record that 'the ALJ's error was inconsequential to the ultimate nondisability determination.'" *Tommasetti*, 533 F.3d at 1038 (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (citations omitted).

## IV.     DISCUSSION

Plaintiff contends that the ALJ harmfully erred in discounting (1) Plaintiff's testimony regarding her subjective complaints and (2) Dr. Faurbo's opinion. (Doc. 18 at 6–16.) For the reasons set forth below, the Court determines that the ALJ did not err.

### A.     The ALJ Properly Evaluated Plaintiff's Testimony

#### 1.     Legal Standard

In evaluating the credibility of a claimant's testimony regarding their impairments, an ALJ must engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id*. The claimant is not required to show that their impairment "could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Id*. (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)). If the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if they give "specific, clear and convincing reasons" for the rejection. *Id*. As the Ninth Circuit has explained:

> The ALJ may consider many factors in weighing a claimant's credibility, including (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing.

*Tommasetti*, 533 F.3d at 1039 (citations and internal quotation marks omitted); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1226–27 (9th Cir. 2009). Other factors the ALJ may consider include a claimant's work record and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains. *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

The clear and convincing standard is "not an easy requirement to meet," as it is "the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)). General

7

findings are not sufficient to satisfy this standard; the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quoting *Lester*, 81 F.3d at 834)).

2. <u>Analysis</u>

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (AR 29.) The ALJ also found that "[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.*) Since the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," the only remaining issue is whether the ALJ provided "specific, clear and convincing reasons" for Plaintiff's adverse credibility finding. *See Vasquez*, 572 F.3d at 591.

Here, the ALJ found that Plaintiff's credibility was undermined by Plaintiff's activities of daily living, as well as the objective medical evidence of record, including records of improvement with treatment. (AR 29–31.) The Court takes each finding in turn.

*a.     Plaintiff's Activities of Daily Living*

In determining whether to credit Plaintiff's subjective complaints, the ALJ "considered factors other than the objective medical evidence alone, including: the claimant's daily activities." (AR 31.) As summarized by the ALJ, the record demonstrates Plaintiff has an ability to use a computer, (AR 50); text, (AR 630); use the telephone, (AR 630); read, (AR 71, 630); cook, (AR 49, 101, 461, 507); and use public transportation (AR 51, 97–98). The Commissioner asserts the ALJ properly discredited Plaintiff on this basis, (*see* Doc. 15 at 4–5), while Plaintiff contends that the ALJ was not sufficiently specific in the articulation of this reason to permissibly discredit Plaintiff's testimony, (*see* Doc. 13 at 11–12).

An ALJ may properly consider a claimant's daily activities when evaluating credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (the nature of daily activities may be considered when evaluating credibility). In evaluating a claimant's credibility, an ALJ may also consider inconsistencies between the claimant's testimony and the claimant's conduct and whether the

claimant engages in daily activities inconsistent with the alleged symptoms. *Molina*, 674 F.3d at 1112. Even where those activities suggest some difficulty functioning, they are grounds for discrediting Plaintiff's testimony to the extent that they contradict claims of a totally debilitating impairment. *Id.* at 1113.

Plaintiff's above-described activities tend to suggest that she has functional abilities consistent with the ALJ's assessed RFC—specifically that she has "no exertional limitations and can understand, remember, and carry out simple instructions; she can use judgement to make simple work-related decisions; she can frequently interact with supervisors; she can occasionally interact with co-workers and the public; and she cannot perform work requiring a specific production rate, such as assembly line work or work with hourly quotas." (AR 31), *see Fair*, 885 F.2d at 603 (finding that if a claimant has the ability to perform activities "that involve many of the same physical tasks as a particular type of job, it would not be farfetched for an ALJ to conclude that the claimant's pain does not prevent her from working"); *see also, e.g., Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the ALJ sufficiently explained his reasons for discrediting the claimant's testimony because the record reflected that the claimant performed normal activities of daily living, including cooking, housecleaning, doing laundry, and helping her husband managing finances); *Morgan*, 169 F.3d at 600 (ALJ's determination regarding claimant's ability to "fix meals, do laundry, work in the yard, and occasionally care for his friend's child" was a specific finding sufficient to discredit the claimant's credibility); *Kelly v. Astrue*, 471 F. App'x 674, 677 (9th Cir. 2012) (holding that ALJ properly made an adverse credibility finding because, in part, claimant's daily activities included driving, washing the dishes, shopping, and caring for her two children); *Nelson v. Colvin*, No. 1:15-cv-00696-SKO, 2016 WL 3407627, at *20 (E.D. Cal. June 20, 2016) (ALJ properly discredited subjective complaints of claimant who suffered from chronic back problems where claimant engaged in activities such as preparing simple meals, washing dishes, driving a car, shopping for groceries and household supplies 2–3 times a week, walking up to a mile, using a computer for about half an hour at a time, visiting with family, mopping and vacuuming, independently handling her own finances, and doing yoga tapes at home.).

The record also contains some contrary evidence, such as Plaintiff's statements that she occasionally gets off at the wrong stop when using public transportation. (*See* AR 51, 56.) The Court concludes, however, that the ALJ properly discredited Plaintiff's testimony that her limitations render her *completely* unable to work. *Fair*, 885 F.2d at 604; *see also Bunnell*, 947 F.2d at 346 ("So long as the adjudicator makes specific findings that are supported by the record, the adjudicator may discredit the claimant's allegations based on inconsistencies in the testimony or on relevant character evidence."). Where the ALJ makes a reasonable interpretation of Plaintiff's testimony, it is not the Court's role to second-guess it. *Rollins*, 261 F.3d at 857 (affirming ALJ's credibility determination even where the claimant's testimony was somewhat equivocal about how regularly she was able to keep up with all the activities and noting that the ALJ's interpretation "may not be the only reasonable one").

        *b.*  *Objective Medical Evidence & Efficacy of Treatment*

The ALJ's second ground for discounting Plaintiff's credibility is that Plaintiff's allegations of significant limitations are inconsistent with the medical evidence of record. (AR 29–30.) In reviewing this evidence, the ALJ found that Plaintiff's subjective symptom testimony was inconsistent with the medical evidence, including records showing improvement with treatment. (AR 30.) Though the Commissioner asserts the ALJ properly discredited Plaintiff on these bases, (*see* Doc. 15 at 3–7), Plaintiff again contends that the ALJ was not sufficiently specific in the articulation of this reason to permissibly discredit Plaintiff's testimony, (*see* Doc. 13 at 8–11).

As to the ALJ's reliance on Plaintiff's improvement with treatment, the Court agrees with the Commissioner. In evaluating a claimant's claimed symptoms, an ALJ may find a plaintiff less credible when their symptoms can be controlled by treatment and/or medication. *See* 20 C.F.R. § 416.929(c)(3)(iv)–(v); *see also Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits.").

It is well settled in the Ninth Circuit that "it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and

debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working." *Garrison*, 795 F.3d at 1017.

Here, the ALJ did not discredit Plaintiff due to waxing and waning symptoms. There is substantial evidence in the record that Plaintiff's mental condition had improved with medications and treatment during the relevant period. For example, in July 2022, Plaintiff reported that she was "compliant on medication which is helping reduce her symptoms." (AR 565.) In a record from May 2023, a provider noted that Plaintiff "has depression and anxiety, [but that] symptoms [were] stable with medications." (AR 638.) And in June of 2023, records reflect that plaintiff had an "improved" response to medication with which she was "compliant." (AR 620.) As there is substantial evidence of Plaintiff's improvement with treatment, such is a clear and convincing reason for not finding Plaintiff's subjective complaints fully credible. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999) (the ALJ's adverse credibility determination properly accounted for physician's report of improvement with medication); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming denial of benefits and noting that claimant's impairments were responsive to treatment).

As to the other objective medical evidence, specifically various "normal" findings, relied on by the ALJ, the Court agrees with Plaintiff as to her complaints related to her mental health and cognition, but not as to her low vision. Under *Brown-Hunter v. Colvin*, the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility. 806 F.3d 487, 494 (9th Cir. 2015). Instead, the ALJ must link the medical evidence at issue to the Plaintiff's testimony. *Id*.

The Court finds that the ALJ properly linked their assessment of the inconsistency of Plaintiff's subjective complaints of low vision with the relevant medical evidence. (AR 30 ("[r]egarding the [Plaintiff's] visual complaints…"); *see Brown-Hunter*, 806 F.3d at 494. However, as to Plaintiff's mental health and cognition, the ALJ did not link the medical evidence to Plaintiff's testimony. To be sure, the record contains evidence of repeatedly normal examinations and mental, intelligence, insight and judgment, and cognitive status findings. (*See*

11

AR 530–31, 533, 536–37, 539–40, 542–43, 545–46, 548, 551–52, 554, 557–58, 562, 567–68.) Yet the ALJ failed to specify which parts of this medical evidence undermined specific aspects of Plaintiff's subjective symptom testimony. *See Brown-Hunter*, 806 F.3d at 493. Under *Brown-Hunter*, the observations an ALJ makes as part of the summary of the medical record are not sufficient to establish clear and convincing reasons for rejecting a Plaintiff's credibility. *Id.* at 494. Instead, the ALJ must link the medical evidence at issue to the Plaintiff's testimony. *Id.* Here, the ALJ did not do so.

This error is harmless, however. Here, inconsistency with the normal findings in the objective medical record was not the sole reason for which the ALJ discredited Plaintiff's testimony. The ALJ articulated several other permissible reasons for discounting Plaintiff's credibility, namely, Plaintiff's improvement with treatment and the evidence of Plaintiff's daily activities as set forth above. Thus, the ALJ's lack of linkage as Plaintiff's subjective complaints of mental limitations is not harmful error. *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162 (9th Cir. 2008) (citing *Batson*, 359 F. 3d at 1197); *Tonapetyan v. Halter*, 242 F. 3d 1144, 1148 (9th Cir. 2001).

In sum, the Court finds that the ALJ offered clear and convincing reasons to discredit Plaintiff's testimony regarding the extent of her limitations. While Plaintiff may disagree with the ALJ's interpretation of the medical evidence and the relevance of Plaintiff's daily activities (*see* Doc. 13 at 8–12), it is not within the province of this Court to second-guess the ALJ's reasonable interpretation of that evidence, even if such evidence could give rise to inferences more favorable to Plaintiff. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989)).

**B.     The ALJ Properly Evaluated Dr. Faurbo's Opinion**

   1.     <u>Legal Standard</u>

Plaintiff's claim is governed by the agency's revised regulations concerning how ALJs must evaluate medical opinions for claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c. The regulations set "supportability" and "consistency" as "the most important factors" when determining the opinions' persuasiveness. 20 C.F.R. § 404.1520c(b)(2). And

12

although the regulations eliminate the "physician hierarchy," deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ must still "articulate how [they] considered the medical opinions" and "how persuasive [they] find all of the medical opinions." 20 C.F.R. § 404.1520c(a)–(b).

The Ninth Circuit has issued the following guidance regarding treatment of physicians' opinions after implementation of the revised regulations:

> The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant. *See* 20 C.F.R. § 404.1520c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). Our requirement that ALJs provide "specific and legitimate reasons" for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions, *see Murray*, 722 F.2d at 501–02, is likewise incompatible with the revised regulations. Insisting that ALJs provide a more robust explanation when discrediting evidence from certain sources necessarily favors the evidence from those sources—contrary to the revised regulations.

*Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022). Accordingly, under the new regulations, "the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id*. at 787.

In conjunction with this requirement, "[t]he agency must 'articulate . . . how persuasive' it finds 'all of the medical opinions' from each doctor or other source, and 'explain how [it] considered the supportability and consistency factors' in reaching these findings." *Id*. at 792 (citing 20 C.F.R. § 404.1520c(b)). "Supportability means the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Id*. at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As the Ninth Circuit also observed,

> The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion. *See id.* § 404.1520c(c)(3). Thus, an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and

13

whether the medical source has examined the claimant or merely reviewed the claimant's records. *Id*. § 404.1520c(c)(3)(i)–(v). However, the ALJ no longer needs to make specific findings regarding these relationship factors.

*Id*. at 792. "A discussion of relationship factors may be appropriate when 'two or more medical opinions . . . about the same issue are . . . equally well-supported . . . and consistent with the record . . . but are not exactly the same.'" *Id*. (quoting § 404.1520c(b)(3)). "In that case, the ALJ 'will articulate how [the agency] considered the other most persuasive factors.'" *Id*. Finally, if the medical opinion includes evidence on an issue reserved to the Commissioner, the ALJ need not provide an analysis of the evidence in his decision, even in the discussions required by 20 C.F.R. § 404.1520c. *See* 20 C.F.R. § 404.1520b(c)(3).

With these legal standards in mind, the Court reviews the weight given to Dr. Faurbo's opinions.

2. <u>Analysis</u>

In finding Dr. Faurbo's opinion unpersuasive, the ALJ explained:

> This opinion is not persuasive, as it is inconsistent with the essentially normal objective examination findings noted throughout the record from Fresno County Behavioral health. Additionally, this opinion is at odds with the longitudinal treatment records which revealed normal memory, cognition and average intelligence. It is also inconsistent with testimony that she was able to use a computer look of [sic] recipes and check her emails . . . . Additionally, such limitations are not supported by the instant objective examination findings as discussed above.

(AR 32 (citations omitted).)

The Court concludes that the ALJ properly evaluated the supportability and consistency of Dr. Faurbo's opinion. As to supportability, the ALJ properly considered that Dr. Faurbo's opinion was not supported by their own observations in the course of their evaluation of Plaintiff. (AR 32.) Specifically, Dr. Faurbo's examination showed intact intelligence, adequate concentration and attention, linear and logical thought process, and an ability to perform calculations. (AR 507–08.)

As to consistency, the ALJ found Dr. Faurbo's opinion that Plaintiff had "moderate limitations in her ability to understand, remember and perform simple, written and oral instructions" as well as "moderate limitations maintaining regular attendance, performing work activities on a consistent basis, performing work activities without special or additional

supervision, accepting instruction from supervisors, interacting with coworkers and the public, and in dealing with usual stresses encountered in a competitive work environment," and "marked limitations in understanding, remembering and performing complex written and oral instructions and in her ability to complete a normal workday or workweek." (*Id.* (citing AR 505–09).)  As referenced by the ALJ, mental, intelligence, insight and judgment, and cognitive status findings. from May 2020 through January 2022 showed that Plaintiff was alert and cooperative, with appropriate normal insight, judgment, and cognition (as relevant to memory). (*See* AR 530–31, 533, 536–37, 539–40, 542–43, 545–46, 548, 551–52, 554, 557–58, 562, 567–68.)  The ALJ also observed that Dr. Faurbo's opinion was inconsistent with Plaintiff's reports of being "able to use a computer [to] look [up] recipes and check her emails."  (AR 32 (citing AR hearing 50; 461; 561).)

Based on the foregoing objective medical evidence and nonmedical evidence, the ALJ's finding that Dr. Faurbo's opinion was inconsistent with the longitudinal record as a whole is legally sufficient and supported by substantial evidence.  It was therefore reasonable for the ALJ to conclude that the record did not support the severity of Dr. Faurbo's opined restrictions, including that Plaintiff would miss four days out of the workweek. (AR 675.) *See Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) ("When the evidence before the ALJ is subject to more than one rational interpretation, [the Court] must defer to the ALJ's conclusion.").

## V.   CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence and is therefore AFFIRMED.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Frank Bisignano, Commissioner of Social Security, and against Plaintiff Angela Lee.

IT IS SO ORDERED.

Dated:   **August 13, 2025**                /s/ *Sheila K. Oberto*
                                                        UNITED STATES MAGISTRATE JUDGE